UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| GREGORY MEANS | CIVIL ACTION |
| VERSUS | NO. 06-4542 |
| DARRELL MIZELL ET AL. | SECTION "I" (2) |

## REPORT AND RECOMMENDATION

Plaintiff, Gregory Means, is a convicted inmate currently incarcerated in the B.B. "Sixty" Rayburn Correctional Center ("Rayburn") in Angie, Louisiana. He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against Rayburn Assistant Warden Kathleen McGinnis, Lt. Darrell Mizell, Lt. Ronnie Seal, Sgt. Douglas Brooks, Sgt. Micah McMurray, Sgt. Larry Weary and Sgt. Bairn B.J. Brumfield. Plaintiff alleges that defendants violated his constitutional rights when they verbally threatened him and threw his mail into the garbage because he tried to correspond with the media. He seeks monetary relief. Record Doc. No. 1 (Complaint at ¶ V).

On October 3, 2006, I conducted a telephone conference in this matter. Participating were plaintiff pro se and Stacy Johnson, counsel for defendants. Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

On September 18, 2006, Means filed a motion for temporary restraining order and/or preliminary injunction. Record Doc. No. 16. This report contains a recommendation for disposition of plaintiff's motion for injunctive relief pursuant to 28 U.S.C. § 636(b)(1)(B).

## THE RECORD

In his complaint, Means stated his claims in this case as follows: "Lieutenant Darrell Mizell, 7-24-06 wrongfully – verbally and illegally threatened without sufficient cause – or – legal authorities that if plaintiff tried to write media Channel 4 News/Ms. Dawn Brown ever again he would f— me over – he illegally threw legal media mail into trash can." Record Doc. No. 1 (Complaint at ¶ IV).

During the telephone conference, Means confirmed that he has four lawsuits pending in this court at this time.[1] He further confirmed that he asserts two specific claims in the instant case: (1) that Lt. Mizell threatened him and (2) that Lt. Mizell destroyed one of plaintiff's outgoing pieces of mail.

---

[1] The three other lawsuits in addition to the captioned matter are: "Means v. Douglas Brooks," C.A. No. 06-5687 "N"(5); "Means v. Assistant Warden Kathleen McGinnis," C.A. N o. 06-5697 "R"(1); and "Means v. Lt. Ronnie Seal," C.A. No. 06-5703.  In general, these three other lawsuits assert claims of brutality, cruel and unusual punishment, failure to protect from harm, harassment, retaliatory threats and discrimination in connection with incidents in the jail that allegedly occurred on April 19 and July 14, 2006.

Means testified that he is currently incarcerated in Rayburn based upon the revocation of his parole on July 14, 2003 on previous convictions in 1985 as an accessory after the fact to first degree murder and armed robbery, for which he was sentenced to a total of 30 years in prison.

As to his claim that Lt. Mizell threatened him, Means testified that he was in the shower on July 23, 2006, the night before the threat occurred. While in the shower, he asked the tier officer, Sgt. "Gus," to ask the lieutenant on duty, who turned out to be Lt. Mizell, if Means could be allowed to make an emergency sick call for injuries he had received in a fight on July 14, 2006. Means said that, after he finished showering, the tier officer escorted him into the Sleet Unit lobby, where he was met by Lt. Mizell and another officer.

Means stated that he had not previously had any problems with Lt. Mizell and "there was no grievance at this point." He testified that, as he approached the lobby and before he could say a word, Lt. Mizell said, "What the f— you wanna make sick call for?" Means said that he became nervous but tried to explain that he needed to make sick call for the injuries he had suffered in the earlier fight. He testified that Lt. Mizell told him, "I'm not going to allow you to make emergency sick call. . . . I ought to break your other f—ing jaw." Means testified that he did not reply, but that Mizell told him, "you

tried to get over on us last night, Gregory Means, . . . you tried to send mail out of here to reporter Dawn Brown last night."

Means testified that he was "stunned" and "stupefied" by what was taking place. He stated that he did not try with any malicious intent to "get over on" the State of Louisiana or jail officials by trying to send mail to the media. He said, "I did it with good intent because I have a grievance here."

Means then asked for permission to read his administrative remedies procedure ("ARP") grievance into the record, stating that "we can basically conclude everything as far as how things went." He was permitted to read the grievance, as follows:

"Violations of federal and constitutional rights–the right to file papers and communicate with courts, lawyers, legal workers and the media. . . . After just a few weeks ago, concernedly writing Assistant Warden Kathleen McGinnis about violations of illegally tampering with any federal mail sent out to legal workers or media, I now truthfully, without malice, file this standard ARP form against Lt. Mizell for violating federal constitutional media mail rights, even threatening me that if I wrote media again he would f— over me. On July 25, 2006, I sent two privileged legal and proper draw slips for indigent postage and legal and media mail, two labeled privileged, legal confidential attorney and media to Ms. Dawn Brown, WWL-TV, Channel 4. Lt. Mizell wrongfully . . . disposed of my legal media to Ms. Dawn Brown and I was verbally

4

threatened and wrongfully punished upon Tuesday, July 26th, of 2006, by Lt. Mizell for mailing properly by way of federal law privileged legal media mail, which by my federal rights can be sealed and mailed 'legal media mail confidential.'  I contend after receiving my draw slip copy on Wednesday, 7-26 of 2006, and seeing 'indigent postage costs' on draw slips stating two sets on 7-25-2005 [sic, actually 2006], cost of only 39 cents, as threatened by Lt. Mizell, I argue and contend he threw away letter to media."  (Case law citations omitted).

    Means confirmed that the Dawn Brown to whom he tried to send the letter is a weather forecaster at a local television station.  He said the general topic of his letter to the meteorologist was trying to get help concerning the civil complaints he had filed in this court, as suggested by the "National Lawyers Guild Jailhouse Lawyers Handbook," that he should try his best to retain counsel and alert the media to his claims "to make sure . . . I would get . . . exposure on my case."  He confirmed that the case he was trying to "get exposure on" was his "original civil claim" concerning an April 19, 2006 incident of "prisoner brutality" filed in this court.  He testified that he had received legal papers the previous night and sent them to the ACLU.  He confirmed that he was referring to his other cases pending in this court in which he asserts claims based on "prisoner brutality" against him at Rayburn and that the letter he wrote to Brown was an attempt to get help with his other civil cases in this court.  He reiterated that his claim in the instant case is

that Lt. Mizell destroyed that letter and did not mail it. He stated that he attempted to send two letters from the jail on that day, one to a law firm and one to Dawn Brown, but he was only charged for one stamp on his indigent mail draw slip.

## ANALYSIS

I.   STANDARDS OF REVIEW

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'" Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended). A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'" Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims. Spears, 766 F.2d at 180. "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more

comfortable to many prisoners." Davis, 157 F.3d at 1005.  The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e).  Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990).  "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists."  Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable.  "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents. " Id. (citing Wilson, 926 F.2d at 482-83; Williams v. Luna, 909 F.2d 121, 124 (5th Cir. 1990)).

After a Spears hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, Jackson v. Vannoy, 49 F.3d 175, 176-77 (5th Cir. 1995); Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." Id. at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997)).  "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not."  Moore, 976 F.2d at 269.  A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint may be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims. Plaintiff's complaint, as amended by his testimony at the Spears hearing, fails to state a cognizable Section 1983 claim under the broadest reading.[2]

## II.  MERE THREATS

Plaintiff's allegations that he was subjected to threats and verbal harassment by defendants, including particularly that Lt. Mizell threatened to break his jaw and to

---

[2] Pro se civil rights complaints must be broadly construed, Moore, 30 F.3d at 620, and I have broadly construed the complaint in this case.

"f— over" him if Means wrote to the media again, are not cognizable under Section 1983. Robertson v. Plano City, 70 F.3d 21, 24 (5th Cir. 1995). The Robertson court noted that "in the Eighth Amendment context, 'mere threatening language or gestures of a custodial officer do not, even if true, amount to constitutional violations.'" Id. (citation omitted); accord Watson v. Winborn, No. 02-10984, 67 Fed. Appx. 241, 241 (5th Cir. 2003); Calhoun v. Hargrove, 312 F.3d 730, 734 (5th Cir. 2002); Vessell v. Gusman, No. 06-2294, 2006 WL 2067723, at *2 (E.D. La. July 19, 2006) (McNamara, J.) (citing Calhoun, 312 F.3d at 734; Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997); Bender v. Brumley, 1 F.3d 271, 274 n.4 (5th Cir. 1993)).

"Claims of hurt feelings, humiliation, and other heartfelt, yet objectively trivial indignities, are not of Constitutional moment . . . ." Jackson v. Liberty County, 860 F. Supp. 360, 363 (E.D. Tex. 1994). "[C]itizens do not have a constitutional right to courteous treatment by the police. Verbal harassment and abusive language, while unprofessional and inexcusable, are simply not sufficient to state a constitutional claim under 42 U.S.C. § 1983." Slagel v. Shell Oil Refinery, 811 F. Supp. 378, 382 (C.D. Ill. 1993), aff'd, 23 F.3d 410 (7th Cir. 1994) (internal citations omitted). In this case, plaintiff's allegations of verbal abuse and threats do not rise to the level of a constitutional violation, and these allegations fail to state a claim upon which relief may be granted.

III.     LEGAL/MEDIA MAIL

Means complains that Lt. Mizell destroyed a letter that he tried to send to television meteorologist Dawn Brown, in which he allegedly sought assistance with his lawsuits pending in this court. His testimony and written submissions state that he had marked the envelope "legal media mail confidential." Means submitted to the court the First Step Grievance Response form that he received from prison officials in response to his grievance about this matter. The response states that plaintiff's letter to Brown was marked as legal mail, but that it was not legal mail as defined by Department Regulation #C-02-009. Record Doc. No. 15.

The Fifth Circuit has held that prison practices or restrictions concerning prisoner mail implicate two distinct but intertwined constitutional rights: (1) the right of access to the courts, which the Supreme Court has indicated lies in both the Due Process Clause and the First Amendment, Wolff v. McDonnell, 418 U.S. 539, 575-76 (1974), and (2) the right to freedom of speech guaranteed by the First Amendment. Walker v. Navarro County Jail, 4 F.3d 410, 413 (5th Cir. 1993); Brewer v. Wilkinson, 3 F.3d 816, 820 (5th Cir. 1993). Specifically, the right of access to the courts is implicated only when the mail in question is legal in nature, while the right to free speech is relevant to claims involving both legal and non-legal mail.

Regardless what rights are implicated, however, it is clear that prisoners' constitutional rights with respect to mail are not absolute.  A prison practice or regulation may permissibly interfere with an inmate's mail, including his legal mail, if the practice is "'reasonably related to a legitimate penological interest.'"  Brewer, 3 F.3d at 824 (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)); see Jackson v. Cain, 864 F.2d 1235, 1248 (5th Cir. 1989) (reasonableness standard applies to challenges to regulations as well as actions taken by a prison official).

To the extent that Means is complaining that Lt. Mizell interfered with his constitutional right of access to the courts, it is well established that prisoners have such a constitutional right.  Bounds v. Smith, 430 U.S. 817, 821 (1977).  "While the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court." Eason v. Thaler, 73 F.3d 1322, 1328 (5th Cir. 1996) (quotation omitted) (emphasis added).

Significantly, to state a claim for violation of his constitutional right of access to the courts, Means must demonstrate that his position as a litigant was actually prejudiced. Lewis v. Casey, 518 U.S. 343, 356 (1996); Cochran v. Baldwin, No. 05-20100, 2006 WL 2418945, at *1 (5th Cir. Aug. 18, 2006); Eason, 73 F.3d at 1328; Walker, 4 F.3d at 413.

The inmate must "demonstrate that the alleged shortcomings . . . hindered his efforts to pursue a legal claim." Lewis, 518 U.S. at 351.

In Lewis, the Supreme Court made clear that an inmate <u>must establish actual injury</u> to state a claim for denial of his right of access to the courts. In examining the particular claims of the inmates in the Lewis case, the Court stated that the First Amendment right of prisoners to access to the courts is the right to "have a reasonably adequate opportunity to file <u>non</u>frivolous legal claims challenging their convictions or conditions of confinement." Id. at 356 (emphasis added).

Means testified that he had tried to send a letter to Dawn Brown, a television weather reporter. He was not trying to send correspondence or pleadings to an attorney or a court. Thus, his letter seeking Brown's help with his pending civil cases was <u>not</u> legal mail and did not implicate his constitutional right of access to the courts. Lt. Mizell's alleged disposal of this letter had no effect on plaintiff's court proceedings, and his access to the courts was not prejudiced in any way. In fact, the records of his other cases in this court establish that he has suffered <u>no</u> actual injury or legal prejudice of any kind in connection with those cases. Accordingly, to the extent Means claims that Lt. Mizell interfered with his access to the courts by discarding his letter to Brown, his claim is legally frivolous and does not state a claim of violation of constitutional rights upon which relief can be granted under Section 1983.

Means may also be asserting that he has a First Amendment right to communicate with the media, which was infringed by Lt. Mizell's conduct.

In Brewer, inmates alleged that prison officials had opened incoming and outgoing legal mail and had inspected it for contraband outside their presence.[3] The Fifth Circuit held that "violation of [a] . . . prison regulation requiring that a prisoner be present when his incoming legal mail is opened and inspected is not a violation of a prisoner's constitutional rights" when there is no proof that such tampering was prejudicial to the inmate's access to the courts and when the practice was reasonably related to legitimate penological interests. Id. at 825.

The Fifth Circuit distinguished between incoming and outgoing legal mail, noting the differing penological concerns involved. The court stated that the "'implications of outgoing correspondence for prison security are of a categorically lesser magnitude than the implications of incoming materials,'" id. (quoting Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989)), but noted that the reasonable relationship to legitimate penological interests test applies to both types of mail. Id. at 824.

Following Brewer, the Fifth Circuit addressed the issue of prisoner mail to and from representatives of the media. The court held that

---

[3] In Brewer, the plaintiffs did not allege that their ability to transmit or prepare a necessary legal document had been affected or that their mail had been censored.

> it is clearly established that, <u>under</u> <u>some</u> <u>circumstances</u>, prisoners have a First Amendment right to communicate with the press. . . . However, so long as reasonable and effective means of communication remain open and no discrimination in terms of content is involved, prison officials are accorded latitude in fashioning restrictions on time, place and manner of communications. Such restrictions must be reasonably related to a legitimate penological interest.

<u>Stefanoff v. Hays County</u>, 154 F.3d 523, 527 (5th Cir. 1998) (citing <u>Pell v. Procunier</u>, 417 U.S. 817, 822, 826 (1974) (emphasis added); <u>Brewer</u>, 3 F.3d at 824). Thus, in <u>Stefanoff</u>, the Fifth Circuit "conclude[d] that Stefanoff's activities [in corresponding with the media] were sufficiently disruptive that [the Sheriff] had a legitimate penological interest in curtailing them. Further, there is no question that Stefanoff retained other reasonable and effective methods of communicating his views." <u>Id.</u>; <u>see also</u> <u>Singletary v. Stadler</u>, No. 01-30260, 2001 WL 1131949, at *1 (5th Cir. 2001) (prisoners have no constitutional right to unmonitored communications with the media) (citing <u>Gaines v. Lane</u>, 790 F.2d 1299, 1307 (7th Cir. 1986) ("[T]here is no reason why mail communication to the media must be given a special status. The inmates have alternative avenues for reaching the general public." Furthermore, "prisoners have no interest in having the media serve as an alternate means for petitioning the government" because they have "'substantial opportunities to petition the executive, legislative, and judicial branches of government directly.' Indeed, these direct communications are treated as

privileged and, therefore, constitute an unimpeded means by which prison inmates may petition the government.") (quoting Pell, 417 U.S. at 828 n.6.)).

In the instant case, Means testified that the letter he had tried to send to Dawn Brown concerned his other pending civil lawsuits in this court and was marked as "legal media mail confidential." As previously noted, the letter was not legal mail and thus was not entitled to any protection under the constitutional right of access to the courts. Because the envelope was improperly marked as legal mail, but was not addressed to an attorney or a court or even to a reporter of legal matters, but instead was addressed to a person well-known to be a television weather forecaster, Lt. Mizell had a legitimate penological interest in preventing the letter from being sent as legal mail. In addition, Means has other reasonable and effective methods of communicating his views, including writing directly to the court where his lawsuits are pending.

Accordingly, plaintiff's media mail claim is legally frivolous and does not state a claim of violation of constitutional rights upon which relief can be granted under Section 1983.

IV.  PENDING MOTION FOR RESTRAINING ORDER OR PRELIMINARY INJUNCTION

As mentioned in the introduction to this report, Means filed a motion requesting that the court issue an injunction or restraining order. Record Doc. No. 16.

Plaintiff alleges in his motion that defendant Lt. Mizell has threatened him with "unwarranted disciplinary charges [and] physical and mental abuse." Plaintiff further alleges that "[i]f a temporary restraining order is issued immediately, the Plaintiff will be able to prosecute this complaint, without fear that the Defendants will retaliate or physically and mentally abuse the Plaintiff. If however, the Court defers entering an order, the Security Staff will be given the opportunity to chip away at Plaintiff's rights ultimately leaving him with no ability to seek relief in this Court. Thus, absent the immediate entry of a temporary restraining order[,] [t]he Plaintiff's civil rights will be further eroded and he will suffer irreparable harm." Id. at pp. 1 and 2.

Plaintiff seeks injunctive relief in the form of an order "directing the [Rayburn] Security Staff and particularly the Security Staff in the Sleet Yard Extended Lock-down (special management unit), to desist from taking any action to interfere with Plaintiff's efforts to litigate this civil rights complaint." Id. at p.2.

According to Rule 65(b) of the Federal Rules of Civil Procedure, a party seeking a temporary restraining order and/or preliminary injunction must set forth "specific facts shown by affidavit or verified complaint" that show that the moving party will suffer irreparable injury before a hearing on the matter may be held. A temporary restraining order and preliminary injunction are extraordinary equitable remedies that may be granted only if plaintiff establishes four essential elements:  (1) a substantial likelihood

of success on the merits; (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is denied; (3) that the threatened injury outweighs any damage that the injunction might cause defendants; and (4) that the injunction will not disserve the public interest. Sugar Busters LLC v. Brennan, 177 F.3d 258, 264 (5th Cir. 1999). The requisite showing is "a substantial threat of irreparable injury if the injunction is not issued." DSC Commc'ns Corp. v. OGI Techs., Inc., 81 F.3d 597, 600 (5th Cir. 1996) (emphasis added).

Applying the foregoing legal standards to the facts he alleges, plaintiff's written submissions and the record to date establish that he is not entitled to a temporary restraining order or preliminary injunction. Although plaintiff's motion alleges that Lt. Mizell has "threatened [him] with unwarranted disciplinary charges [and] physical and mental abuse," these wholly unsubstantiated allegations are the rankest form of speculation, and Means has not established that any injury he may suffer in the future would be irreparable. Any cognizable injury that he may suffer as a result of defendants' alleged or anticipated actions may adequately be remedied through the ordinary judicial process without need for a preliminary injunction or temporary restraining order.

It also cannot be concluded that plaintiff's complaint presents "a substantial likelihood of success on the merits." DSC Commc'ns Corp., 81 F.3d at 600. Although plaintiff's allegations must be accepted as true for the initial screening process required

17

for such cases, 28 U.S.C. § 1915A; Martin v. Scott, 156 F.3d 578 (5th Cir. 1998), and I have done so above, no such requirement applies to his request for injunctive relief. Means has not clearly alleged at this early stage of the proceedings that a violation of his clearly established constitutional rights has occurred. Moreover, because Means seeks an injunction, injunctive relief interfering with the administration of prison functions by the court, without justification, would disserve the public interest.

For all of these reasons, plaintiff's motion for a temporary restraining order or other preliminary injunctive relief should be **DENIED**.

## RECOMMENDATION

For all of the foregoing reasons, **IT IS RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

**IT IS FURTHER RECOMMENDED** that plaintiff's motion for a temporary injunction or restraining order be **DENIED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with

notice that such consequences will result from a failure to object.  <u>Douglass v. United Servs. Auto Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this ___13th___ day of November, 2006.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE